SUMMERS, Justice
(dissenting).
While I agree that this judgment should be affirmed, I do not agree with the practice this Court has adopted of affirming serious criminal cases by a one-word judgment: “Affirmed”. In this cycle twenty-six such judgments have been handed down.[1]
In my view fully researched and justified opinions serve an essential function in the process of adjudication in state courts of last resort.
Principally, in affirming a conviction the opinion informs the defendant and his counsel of the reasons why the Court has rejected their claim of error in the trial. From this source the litigant learns of the consideration given to his case. Only an insensitive attitude would deny this defendant that much on his sentence to imprisonment for the rest of his life.
By reference to a court opinion the loser is afforded an opportunity to determine whether a rehearing can be obtained in order that he might point out to the Court errors which he believes it has committed. At the same time, the opinion informs him if there is a basis for resort to a higher *513 forum. If the opinion is accurate in its facts and supported by the law, the condemned man, although he may never openly concede the fact, is conciliated thereby and justice is done.
Opinions serve, also, to inform the public. As public records, they articulate the answers to vital issues in the field of criminal law which are of such paramount importance at this time. When widely disseminated in the news media, they assist the public generally in determining future conduct. Opinions serve, too, where judges are elected, to keep the public informed on the performance of the judges.
At the same time opinions are a principal source of law for deciding future cases, and judges and lawyers are instructed by them. The Court’s opinion should declare and settle the law for the legal profession with regard to the particular facts involved in the case. And a statement of the essential facts upon which the decision rests must be stated in every opinion. On the other hand, (in view of the Court’s readiness to depart from previously settled principles) written opinions will disclose the juristic revolution openly if it is the judicial purpose to work one. In this connection, the use of the per curiam further shrouds the adjudication, failing as it does to name the justice principally responsible for the research and suggested decision the Court has adopted.
Not the least important of the functions a written opinion fulfills is that writing them enforces research, a more thorough examination of the record and the more thoughtful deliberation so essential to produce the likelihood of a just result. Thereby snap judgments are avoided.
It may be said, therefore, that the considered rendition of opinions is a mode of doing justice. To abandon the practice is to erode the safeguards which opinions furnish in the appellate process. To do so is a compromise with a method proven by practice, tradition and custom. A long-settled proposition holds that a judgment which does not contain the reasons on which it is founded is unconstitutional and null. Henderson v. Bowles, 3 Mart. (N.S.) 152 (La. 1824). Compare State v. Andry, 260 La. 79, 255 So.2d 81 (1971), Summers, J., dissenting. Such a departure will surely impair the attainment of the high quality of justice which courts should constantly strive to attain.
Aside from these salutary and basic considerations, there is a constitutional impediment to dispensing with opinions in these cases. At the time of the adoption of the Constitution of 1974 the procedure adopted in this case, for rendition of judgment, had never before been employed in this Court’s history, so far as I can determine. It is my belief that it was not the intention of the drafters of our 1974 Constitution to either permit or bring about such a change when they proclaimed that “a case shall be ap-pealable to the supreme court if . the defendant has been convicted of a felony . . .” La.Const. art. V, § 5(D). (emphasis added).
A predominant theme of the convention was to bring about brevity in the new draft; and, therefore, those responsible for the Constitution undoubtedly contemplated, without articulating the obvious, that the appellate process in this Court would thereafter be in keeping with the concept of appellate practice as it then existed; full opinions being the long-standing practice. Most, if not all, of the delegates, I believe, intended that the appeal they guaranteed to those convicted of serious crimes would be in accordance with the then existing practice calling for full opinions. No manifestation of an intention to change that concept is in evidence. For example, the predecessor Article (La.Const. art. VII, § 10 (1921)) deals with the same subject matter, and, insofar as the nature of the appeal is concerned, the new article makes no change. This pertinent language of the 1921 Constitution supports that conclusion: “The following cases shall be appealable to the Supreme Court . . . . Criminal cases in which the penalty of death or imprisonment at hard labor [felony] may be imposed . . . .” (emphasis added).
This intention is expressed by the Chairman of the Committee on the Judiciary of *514 the Convention when he explained to the delegates that “[t]his section (La.Const. art. V, § 5) represents no great change from the present constitutional provisions.” With particular reference to the distinction between the Court’s having a choice in matters heard under its supervisory jurisdiction and the mandatory jurisdiction imposed by sub-section (D) of Section 5 of Article V, he explained that the Supreme Court “has no discretion” and “must hear these kind of cases” — such as felony convictions which have been appealed. Constitutional Convention of 1973, Verbatim Transcripts, Vol. IX, p. 50-51 (30th Day’s Proceedings, Aug. 15,1973). As I read the explanation, it is a representation to the delegates that no substantial change would result from the new constitutional provision on the appeals of criminal cases for the Supreme Court.
Thus, in my view, the Court gives these “Affirmed” cases a treatment similar to that accorded an application for writs which does not require a judgment of the Court on its merits. Writ applications are made under the Court’s supervisory jurisdiction, La.Const. art. V, § 5(A) (1974), — not its appellate jurisdiction, and the difference is significant. In the case of an application for writs under this Court’s supervisory jurisdiction, the Court is granted plenary power to grant or deny the application without a written opinion. The reason is this denial is not a “judgment”, but is, instead, the exercise of the Court’s constitutional authority to review or not to review the judgment. In the case of an appeal, however, no like authority is granted. To the contrary, the Constitution mandates that the Court take the case and accord it the treatment appeals contemplate; this, I say, is a full opinion, not a one-word disposition.
In the Court’s anxiety to keep its calendar current it has failed to abide by the Constitution, the established appellate practice at the time of the adoption of the Constitution, and the long-standing custom and tradition in Louisiana’s law. In doing so, in my view, due process is denied this litigant under the Federal and State Constitutions. U.S.Const. amend. V, amend. XIV, § 1; La.Const. art. I, § 2 (1974). For, when appellate practice requiring full opinions is so well-established and of such long-standing, its abolition denies the litigant a right he expected and a process which is his due. Measured against the urge to maintain a current calendar and the desire to alleviate the Court’s labors, the Louisiana constitutional requirement of Article V, Section 5(D), and the due process guarantees embodied in the Federal and State Constitutions must prevail.
It is an inescapable fact that the criminal docket of this Court has increased immeasurably in recent years, and the task of keeping current is extremely burdensome. But the relief must come from constitutional amendments relieving this Court of direct appeals in criminal cases. The right to direct criminal appeals must be transferred to the Courts of Appeal. Those judgments will then be reviewed by this Court on applications for writs. Unless this is accomplished soon, these “Per curiam affirmed” opinions foretell a significant reduction in the quality of criminal justice in this State.
I, therefore, dissent from this Court’s adoption of this practice.

. # 57,780, State v. Hills; # 57,791, State v. Duhon; # 57,793, State v. Willis; # 57,867, State v. McQueen; # 57,877, State v. Bernhard; # 57,901, State v. Carter and Mealey; # 57,902, State v. Farrell; # 57,916, State v. Robinson; # 57,927, State v. Darby; # 57,928, State v. Johnson; # 57,930, State v. Brown and Storks; # 57,939, State v. Matthews; # 57,940, State v. Veal; # 57,965, State v. Sumler; # 57,970, State v. Jones; # 57,985, State v. Hills; # 58,006, State v. Henry; # 58,008, State v. Hickerson; # 58,042, State v. Every; # 58,043, State v. McCoy; # 58,093, State v. Lacey; # 58,119, State v. Benion; # 58,130, State v. Ezeb; # 58,152, State v. York; # 58,156, State v. Yokum; # 58,168, State v. Jones.